LAW OFFICES
**Broening Oberg Woods & Wilson**
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL AVENUE, SUITE 1600
PHOENIX, ARIZONA 85004-1047
TELEPHONE: (602) 271-7700

Jessica J. Kokal, #029042
jjk@bowwlaw.com
Kelley M. Jancaitis, #025555
kmj@bowwlaw.com
*Attorneys for Defendants*
*City of Phoenix and Officers Drake & Cowan*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guadalupe Gallo, on behalf of himself and the Estate of Raul Mendez; Ralphie Mendez; Janessa Mendez, on behalf of her minor child, X.M.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>City of Phoenix; Taylor Drake; Alexander Cowan,<br><br>　　　　　　　　　　Defendants. | NO. 2:25-CV-00759-MTL<br><br>**MOTION TO DISMISS SECOND AMENDED COMPLAINT [DOC. 18]** |

Despite several attempts at amendment, Plaintiffs' Second Amended Complaint ("SAC") fails to state any valid state or federal claim against Defendants City of Phoenix ("the City"), Taylor Drake, or Alexander Cowan relative to: state law claims for wrongful death based on battery (Count 1), wrongful death based on gross negligence (Count 2), and negligent hiring, training, and supervision (Count 3); and federal § 1983 claims alleging unreasonable seizure (Count 4), excessive force (Count 5), violation of familial relationship (Count 6), and *Monell* liability (Count 7).[1] The entire SAC should be dismissed consistent

---

[1] Counsel certifies, pursuant to LRCiv 12.1(c) and through her signature below, that Plaintiffs were notified in writing of the issues to be asserted in the Motion. The parties did meet and

with Federal Rule of Civil Procedure 12(b)(6).

**I.   FACTUAL BACKGROUND: RAUL MENDEZ WAS DETAINED FOR GIVING A FALSE NAME AND SHOT WHEN HE DID NOT RESPOND TO COMMANDS TO STOP REACHING FOR AN OFFICER'S SERVICE WEAPON**

This motion assumes the well-pled facts of the SAC are true. They are:

Plaintiffs are the surviving father and children and the estate of Raul Mendez, who was shot and killed during an altercation with Phoenix Police Officers Drake and Cowan on July 1, 2023. [Doc. 18 ¶¶ 1-3, 39, 44-46.] That day, the Officers were dispatched to a burglary in process at a storage facility in Phoenix. [Doc. 18 ¶¶ 16-17.] The suspects were described as a man and a woman. [Doc. 18 ¶ 17.]

At the time, Raul and his friend Sonya were in fact attempting to force their way into a storage unit at the subject facility. [Doc. 18 ¶¶ 11-15.] The Officers did not know or have reason to know that management had given Raul and Sonya permission to "try and force it" into a unit rented by Sonya; although the Officers spoke with the facility manager on arrival, she did not disclose this fact. [Doc. 18 ¶ 20.]

When the Officers arrived at the location of the suspected burglary, Raul (a man) and Sonya (a woman) were getting water out of a nearby spigot. [Doc. 18 ¶ 21.] The Officers detained them while they investigated. [Doc. 18 ¶¶ 22-26.]

When requested, Sonya produced her identification. [Doc. 18 ¶ 29.] Raul did not have ID and instead provided "a name" verbally.[2] [Doc. 18 ¶ 30.] While Officer Drake checked the IDs, an employee of the storage unit explained to Officer Cowan that Raul and Sonya had been given permission to enter the facility and to try to force their way into Sonya's unit. [Doc. 18 ¶¶ 31-37.]

---

confer on the issues but all were not curable and/or cured in Plaintiffs' third attempt to state cognizable claims.

[2] Plaintiffs amended their previous complaints, which asserted Raul gave "his name," to allege instead that Raul gave "a name." [*See* Doc. 1-2 at 4-5, ¶¶ 29, 42; Doc. 1-7 at 4-5, ¶¶ 29, 42.]

Officer Drake returned and, apparently unable to confirm Raul's identity, asked him to provide his information again. [Doc. 18 ¶ 37.] Raul again gave "a name." [Doc. 18 ¶ 38.] In prior iterations of the complaint, Plaintiffs acknowledged that Raul gave Officer Drake a different birthdate on the second request. [Doc. 1-2 at 5, ¶ 42; Doc. 1-7 at 5, ¶ 42.]

Officer Drake told Raul he was under arrest and "a struggle ensued." [Doc. 18 ¶¶ 38-39.] In prior iterations of the complaint, Plaintiffs acknowledged the Officers "moved in to detain Mr. Mendez for providing false information." [Doc. 1-2 at 5, ¶ 42; Doc. 1-7 at 5, ¶ 42.]

During the struggle, Raul and both Officers lost their balance and fell to the ground. [Doc. 18 ¶ 40.] A civilian employee of the storage facility stepped in to assist. [Doc. 18 ¶ 41.] Officer Drake delivered several knee strikes and both Officers pulled on Raul's arms in an attempt to effectuate the arrest. [Doc. 18 ¶¶ 41-43.] In prior iterations of the complaint, Plaintiffs acknowledged that Raul "landed partly on top of Officer Cowan," and "was still on top of Officer Cowan" when Officer Drake approached. [Doc. 1-2 at 5, ¶¶ 46-47; Doc. 1-7 at 5, ¶¶ 46-47.]

Officer Drake perceived that Raul was reaching for Officer Cowan's taser and "yelled at Raul to stop." [Doc. 18 ¶ 44.] When his warning went unheeded, Officer Drake shot Raul three times. [Doc. 18 ¶¶ 44-45.] Despite immediate rendering of first aid, Raul died from his injuries. [Doc. 18 ¶ 46.]

## II.     THE ALLEGATIONS OF ¶¶ 47-60 ARE NOT WELL-PLED AND SHOULD BE DISREGARDED

As an initial matter, Plaintiffs rely heavily (primarily relative to Counts 3 and 7) on references to the conclusions of a Department of Justice ("DOJ") report and recommendations that were expressly retracted in May of 2025. [Doc. 18 ¶¶ 47-60.] *See* Press Release No. 25-534, *The U.S. Department of Justice's Civil Rights Division Dismisses Biden-Era Police Investigations and Proposed Police Consent Decrees in Louisville and Minneapolis* (May 21, 2025),     https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-

dismisses-biden-era-police-investigations-and ("The Civil Rights Division will also be closing its investigations into, and retracting the Biden administration's findings of constitutional violations on the part of, the following additional local police departments: . . . Phoenix, Arizona.").[3]

Even if their contents had not been expressly disavowed by the DOJ, the allegations in these paragraphs are not well-pled; they are merely the hearsay conclusions of unknown and unidentified third parties. [*See* DOC. 18 ¶¶ 48 ("the DOJ issued a report . . . which concluded . . ."), 49 ("The DOJ also concluded . . ."), 50 ("The DOJ further concluded . . ."), 51 ("The DOJ determined . . ."); 52 ("The DOJ found . . ."), 53 ("The DOJ also determined . . ."); 54 ("The DOJ concluded . . ."), 55 ("The DOJ also found fault . . .), 56 (stating DOJ "also found . . ."), 57 (summarizing conclusions from investigation into training), 58 (summarizing conclusions from investigation into supervision).] *See also Marten v. Montana*, No. CV 17-31-H-CCL, 2019 WL 4753249, at *3 (D. Mont. Sept. 30, 2019) (recognizing the analysis and findings contained in a DOJ report are conclusions and not facts). Because the conclusions have been retracted, no witness could appear at trial to make these assertions.

The now-withdrawn DOJ report *itself* noticeably fails to cite any confirmable sources from which such facts could be obtained. Moreover, many of the asserted conclusions directly contradict findings made in this Court regarding the viability of the purported constitutional violations described. *See, e.g., Harris v. Bertz*, CV-20-00078-PHX-DLR, 2022 WL 3682027 (D. Ariz. 2022) (finding – contrary to the DOJ report at 19 – that there "are no triable issues as to whether Officer Bertz was justified in using deadly force"), *aff'd Harris v. City of Phoenix*, No. 22-16307, 2023 WL 6635077 (9th Cir. 2023) (seemingly cited as an example in

---

[3] The Court can and should take judicial notice of the DOJ press release, which is a public record on file with a government agency whose contents are not subject to reasonable dispute. *See* Fed. R. Evid. 201; *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1186 n.3 (9th Cir. 2024) (congressional press release "not subject to reasonable dispute"); *Taleff v. Sw. Airlines Co.*, 554 F. App'x 598, 599 n.1 (9th Cir. 2014) (taking judicial notice of DOJ press release announcing closure of investigation into a challenged merger).

the DOJ report at p. 19); *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2022 WL 357351 (D. Ariz. 2022) (concluding — contrary to DOJ report at 75 — that the plaintiffs could not prove that gas dispersal during protest activity violated their constitutional rights).

The conclusions advanced in the retracted DOJ report are the ultimate issue advanced by the SAC, and amount to nothing more than a pronouncement of liability. The SAC does not state any <u>facts</u> that would support them. Conclusions unsupported by factual allegations are not well-pled and should be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[W]e 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Prokenpek v. L.A. Cnty. Sheriff's Dep't*, CV 13-0094 JFW (AS), 2015 WL 13918084, at *9 (C.D. Cal. Dec. 22, 2015), *report and recommendation adopted* 2016 WL 11759098 (collecting cases confirming that general conclusions in a DOJ report are not facts sufficient to sustain a claim premised on police misconduct).

For either and both of these reasons, the Court should strike and/or disregard SAC ¶¶ 47-60 in resolving this 12(b)(6) motion.

### III. NO FACTS SHOW A PROPENSITY FOR VIOLENCE, OR THE CITY'S KNOWLEDGE THEREOF, SO THE CITY IS IMMUNE FROM VICARIOUS LIABILITY ASSERTED IN COUNT 1

In Count 1, Plaintiffs allege the City is vicariously liable for the assault and battery allegedly committed by Officer Drake when he shot Raul three times.[4]

Under Arizona law, a public entity "is immune from liability for damages caused by an employee's felony act unless the entity knew of the employee's propensity to commit such acts." *Ryan v. Napier*, 245 Ariz. 54, 61 (2018); A.R.S. § 12-820.05(B). Assault and battery with a deadly weapon and that causes serious physical injury, as alleged here, are felony offenses. *See* A.R.S. §§ 13-1203, -1204(A)(1)-(3).

---

[4] Plaintiffs concede Officers Drake and Cowan were not served with a notice of claim so any direct state-law claim against them is barred by A.R.S. § 12-821.01; accordingly, their claims in Counts 1 and 2 are vicarious as to the City only. [SAC ¶¶ 71, 81.]

Plaintiffs have not alleged any facts suggesting that Officer Drake had a propensity to commit such acts. Nor have they alleged facts suggesting the City knew or should have known of that as-yet unalleged propensity. Count 1 must be dismissed.

## IV. PLAINTIFFS DO NOT STATE A CLAIM FOR GROSS NEGLIGENCE IN COUNT 2

In Count 2, Plaintiffs allege the City is vicariously liable for wrongful death premised on the purported gross negligence of Officers Drake and Cowan.

The Arizona Supreme Court has held that negligence claims cannot be premised on an officer's intentional use of force, nor his "internal evaluation about whether to use force." *Ryan v. Napier*, 245 Ariz. 54, 60-61, ¶¶ 21-22 (2018). Count 2 cannot be sustained on allegations of "escalating (instead of de-escalating) the confrontation," using lethal rather than non-lethal force, or failing to interfere with a use of force (all of which are the result of an unactionable internal evaluation of whether and how to use force); or the use of force itself. *See id*. These allegations must be disregarded in the negligence analysis. [Doc. 18 ¶¶ 76-77.]

Separately, an alleged failure to intervene is actionable only where the bystander-officer has a realistic opportunity to intervene but fails to do so. *See Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). The SAC alleges Officer Cowan was on the ground and holding onto Raul's arm when — in quick succession — Raul attempted to reach for Officer Cowan's service weapon, failed to comply with an order to stop, and was shot. These are not facts on which a reasonable jury could conclude Officer Cowan had a realistic opportunity to intercede.

The remaining bases asserted for Count 2 involve the violation of law enforcement standards requiring reasonable suspicion to detain and advising of the reason for an arrest. But gross negligence requires more than a mere violation of the standard of care; it requires facts demonstrating a <u>conscious disregard</u> of an <u>unreasonable</u> risk of bodily harm and <u>high</u> probability that <u>substantial</u> harm will result. *Noriega v. Town of Miami*, 243 Ariz. 320, 328

¶¶ 35-36 (App. 2017). Even if the remaining allegations are presumed true, there is no conscious disregard and no unreasonable risk of substantial bodily harm associated with these deficiencies in police detention protocol. Count 2 does not state a claim.

## V. PLAINTIFFS DO NOT STATE A CLAIM FOR GROSS NEGLIGENCE AGAINST THE CITY IN COUNT 3

In Count 3, Plaintiffs allege the City is liable in gross negligence related to its hiring, training, supervision, and/or retention of the Officers.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a relator's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

But this SAC offers nothing else. The SAC does not allege any <u>facts</u> related to Officer Drake's or Officer Cowan's hiring, training, supervision, or retention, or any <u>facts</u> suggesting the City knew or should have known that these particular Officers were ill-equipped to work in law enforcement. *See supra* Part II. The SAC only generally asserts conclusions that, if proven by facts, could give rise to liability. [Doc. 18 ¶ 85.] Without the facts however, the claim fails. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Count 3 must be dismissed.

## VI. COUNT 4 DOES NOT STATE A CLAIM FOR WRONGFUL DETENTION OR ARREST AND IS SEPARATELY BARRED BY QUALIFIED IMMUNITY

In Count 4, Plaintiffs allege the Officers violated Raul's Fourth Amendment Rights by detaining him without reasonable suspicion.

The facts alleged in the SAC demonstrate that the Officers <u>did</u> have reasonable suspicion to detain Raul during their investigations into the reported burglary, and <u>did</u> have probable cause to believe Raul had not been truthful about his identity when asked in the course of an investigation.

Both probable cause and reasonable suspicion are evaluated based on the "totality of the circumstances" known to the officers at the time. *United States v. Arvizu*, 534 U.S. 266,

274 (2002). Reasonable suspicion exists when an officer is aware of "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir.2011). The process "precludes a 'divide-and-conquer analysis"; even though individual acts may appear innocent, "taken together, they may warrant further investigation." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078–79 (9th Cir. 2013).

As relayed in the SAC, the Officers were dispatched to a report of a burglary in progress and directed by the reporting party to the specific location where he had seen a man and a woman attempting to break into a storage unit. Sonya and Raul were a man and a woman, the only two people present in the area, and admitted that they had in fact been trying to force a unit open. The Officers had not yet learned Sonya and Raul had permission to act. These facts are sufficient to establish a reasonable suspicion to detain them pending further investigation.

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008). Conclusive evidence of guilt is not necessary. *Id.*

In Arizona, it is unlawful to give a law enforcement officer false information, assume a false identity, and to refuse to provide a true full name when detained. *See* A.R.S. §§ 13-2907.01 (false reporting to law enforcement), -2006 (criminal impersonation), and/or -2412 (refusing to provide truthful name). As relayed in the SAC, Raul provided "a name" — not his own name. Officer Drake was unable to verify that name, so asked Raul to confirm his identity, at which time Raul provided inconsistent information.[5] In totality, this was sufficient

---

[5] Although Plaintiffs removed the allegation that Officer Drake heard Raul provide a different birthdate on the second request, a plaintiff cannot avoid dismissal by deliberately omitting crucial information. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676,

to establish probable cause for arrest. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146-47 (9th Cir. 2012) (concluding officer had probable cause to arrest for providing false information when suspect gave a misleading name that could not be used to verify her identity).

Regardless, the claims are barred by qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson v. Callahan,* 555 U.S. 223, 230 (2009)). An officer will be denied qualified immunity in a § 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) An officer does not violate a clearly established right "unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood he was violating it." *Mattos*, 661 F.3d at 440 (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015)).

Even if Raul's Fourth Amendment rights were violated (a proposition not supported by the SAC), the question becomes whether the Officers were "plainly incompetent" or knowingly violated the law in detaining and then arresting him. *Stanton v. Sims*, 571 U.S. 3, 6 (2013). The circumstances alleged are such that, in totality, a reasonable officer could have believed his actions in detaining and then arresting Raul were justified. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993) (finding officers are immune to liability "[i]f a reasonable officer could have believed [his] actions were justified "notwithstanding that reasonable officers could disagree on this issue"). At worst, the SAC suggests the Officers

---

681 (9th Cir. 2006) (considering contents of documents relied on in but not referenced in but not attached to the complaint).

9

acted too conservatively in their decisions to detain and arrest. Such variations are not the result of "clear incompetence," but the dynamic nature of law enforcement, and entitled to the protections of qualified immunity. For any and all of these reasons, Count 4 should be dismissed.

## VII. COUNT 5 DOES NOT STATE A CLAIM FOR EXCESSIVE FORCE AND IS SEPARATELY BARRED BY QUALIFIED IMMUNITY

In Count 5, Plaintiffs allege Officer Drake violated Raul's Fourth Amendment Rights by using deadly force.[6]

An officer's use of deadly force is reasonable if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)) (emphasis omitted). "The immediacy of the threat posed by the suspect is the most important factor." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014). The Court should also consider whether a warning was practicable and given before deadly force was employed. *Id*. at 794. Additionally:

> We take the perspective of an officer on the scene without the benefit of 20/20 hindsight and consider that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."

*Id*. (quoting *Graham v. Connor,* 490 U.S. 386, 396-97 (1989)).

As relayed in the SAC, Officer Drake was attempting to arrest Raul when "a struggle ensued." While Officer Drake, Raul, Officer Cowan, and a civilian were in close proximity, Officer Drake observed Raul reaching for Officer Cowan's taser. Officer Drake told Raul to stop, to no avail. Multiple courts have held that deadly force is reasonable if a suspect reaches

---

[6] Plaintiffs suggest the Officers should have chosen some other course of action. The Fourth Amendment is not concerned with comparisons; only with whether the chosen course of action was within the bounds of the constitution.

for a weapon in defiance of an officer's commands to cease and desist. *E.g., Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) ("An officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun."); *Estate of Moppin-Buckskin v. City of Oakland*, No. C 08-04328 CW, 2010 WL 147976 (N.D. Cal. 2010) (finding it reasonable to use deadly force against suspect who fled traffic stop, failed to follow orders, dropped his hands, and "made a movement toward his waist area as though reaching for a weapon"). Plaintiffs cannot prove excessive force on these facts.

Again, however, the claim is separately barred by qualified immunity. "An officer using deadly force is entitled to qualified immunity, unless the law was clearly established that the use of force violated the Fourth Amendment." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir.2010). But Ninth Circuit precedent is again "clear that when a suspect reaches for a gun or aims a weapon at officers, responding with deadly force <u>does not</u> violate the Constitution." *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 828 (9th Cir. 2023) (emphasis added). *See also Cruz v. City of Anaheim*, 765 F.3d 1076, 1078-79 (9th Cir. 2014); *George v. Morris*, 736 F.3d 829, 838-39 (9th Cir. 2013) (suspect does not have a right to be free from deadly force if he reaches for his waistband or makes similarly threatening gesture indicating he is an immediate threat to the police or public).

The SAC acknowledges that, from Officer Drake's perspective, Raul appeared to be reaching for Officer Cowan's weapon during a struggle and at a time when Officer Cowan was vulnerable, and that Raul did not respond to commands to stop, placing both the Officers and the nearby civilians at risk. There is no clearly established right to be free from the use of force when attempting to arm oneself (through disarmament of an officer) in a close, physical confrontation with law enforcement. A reasonable officer could believe, based on the totality of the circumstances and existing law, that employing deadly force was warranted. Officer Drake is entitled to qualified immunity on the facts asserted in the SAC, so Count 5 should

also be dismissed.

## VIII. PLAINTIFFS DO NOT STATE FACTS EVIDENCING A PURPOSE TO HARM AS NECESSARY TO SUSTAIN COUNT 6 FOR VIOLATION OF FAMILIAL RELATIONSHIP

In Count 6, Plaintiffs allege the Officers violated their Fourteenth Amendment interest in a familial relationship.

The Ninth Circuit recognizes a Fourteenth Amendment interest in a familial relatoinship. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). In order for official conduct to violate a familial due process right, it must "shock the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Courts consider the facts of the case in order to determine if an officer's conduct meets the "shocks the conscience" standard. *Id*. To meet this standard in emergency situations that necessitate fast action and involve competing public safety obligations, a plaintiff must show that an official acted with a "purpose to harm." *Id*. at 1137-39.

While the SAC does not specify the length of the incident, the facts demonstrate a situation in which the Officers were required to make split-second decisions on how to best respond to a risk posed by a person who had already concealed his identity and, from their perspective, sought to arm himself and disarm law enforcement, during an active struggle. The purpose-to-harm standard applies here. Thus. to state a claim in Count 6, the alleged facts must evidence a purpose to harm unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d at 1137.

Purely reactive decision-making and emergency response do not evidence a purpose to harm. *See id*. at 1140. Instead, the facts must demonstrate an affirmative intention "to cause harm unrelated to the legitimate object of arrest," to "induce . . . lawlessness, or to terrorize, cause harm, or kill," or to "teach [the suspect] a lesson" or "get even." *Id*. There is no liability under the purpose-to-harm standard if the officer's reaction was not "driven by anything other than his 'instinct . . . to do his job as a law enforcement officer," <u>even if</u> the officer

misperceived danger or acted irresponsibly. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

The SAC does not state facts sufficient to meet this standard. It instead demonstrates that the Officers had a legitimate basis to believe Raul had violated A.R.S. §§ 13-2907.01, -2006, and/or -2412 when he did not provide his true name upon request; were acting in accordance with a legitimate law enforcement purpose to effectuate Raul's arrest; had an actual if mistaken belief that Raul was seeking to arm himself and disarm Officer Cowan while Officer Cowan was vulnerable; and made a snap decision in an escalating situation. No reasonable jury could find an affirmative purpose to harm on these facts, and Count 6 must be dismissed.

### IX. PLAINTIFFS DO NOT PLEAD FACTS EVIDENCING A PATTERN AND PRACTICE SUFFICIENT TO STATE A *MONELL* CLAIM IN COUNT 7

In Count 7, Plaintiffs allege the City is liable because it adopted a policy, practice, or custom that was the moving force behind the constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The claim fails from the start because, for the reasons stated in Parts VI, VII, and VIII *supra*, the SAC does not assert any viable constitutional claim.

Count 7 also fails on its merits. To sufficiently plead *Monell* liability, Plaintiff "may not simply recite the elements," but must identify "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1063 (D. Ariz. 2020) (quoting *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)).

As explained in Part II *supra*, the SAC contains no facts in this regard, and the conclusions of a regulatory body since retracted are not well-pled. For the reasons stated in Part II, and others, other courts have rightfully declined to afford a DOJ report any credence in establishing a pattern of unconstitutional acts. *See, e.g., Jordan v. Brumfield*, 687 Fed. App'x 408 (5th Cir. 2017); *Sloatman v. Housewright*, No. 2:21-cv-08235-WLH, 2023 WL

8852375 (C.D. Cal. 2023); *Whitfield v. Riley*, No. CV 09-1877, 2021 WL 2354970 (E.D. La. 2021) (declining to take judicial notice of a single sentence in a DOJ report).

Regardless, neither the SAC nor the DOJ report identifies any specific or similar incidents upon which an inference of pattern or practice can be drawn. The SAC does not identify any dates or situational factors that would be necessary to draw parallels relevant to the present case. No custom or practice is adequately alleged. *See Ramirez v. Las Vegas Metro. Police Dep't*, 22 Fed. App'x 828, 831 (9th Cir. 2001) (news reports that do not relay analogous facts "have virtually no probative value" on the existence of a municipal custom of using excessive force); *Leibel v. City of Buckeye*, 364 F. Supp. 3d 1027, 1039 (D. Ariz. 2019) (plaintiff failed to state a plausible *Monell* claim in absence of any specific facts demonstrating arguably similar constitutional violation).

*Andrich* is on point. There, the plaintiff identified a statistic that the law enforcement agency "led the nation's municipalities for fatal officer shootings" and alleged agency leadership ignored the problem and failed to require training and documentation that would reduce that number. 470 F. Supp. 3d at 1063. The plaintiff did not state any facts establishing a pattern of similar constitutional violations or any facts regarding where and when the alleged acquiescence in the purported custom occurred. *Id*. at 1064-65. Instead, like here, the SAC only "*asserts* in conclusory fashion that the City maintained certain policies" but "fails to allege any *facts* to support those assertions." *Id*.; *Leibel*, 364 F. Supp. 3d at 1039. *See also Moore v. City of Orange*, 2017 WL 10518114, \*3 (C.D. Cal. 2017) (dismissing *Monell* claim that merely listed the various customs, policies, and practices that allegedly resulted in the constitutional violation).

The same is true here. Nothing in the SAC separates it from the mere "'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*." *Dougherty v. City of Covina*, 654 F.2d 892, 900 (9th Cir. 2011). Accordingly, Plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face" under the principles

14

announced in *Monell* for a claim premised on custom or practice. *Id.* (quoting *Twombly*, 550 U.S. at 570).

## X. PLAINTIFFS DO NOT PLEAD FACTS ESTABLISHING THE REQUIRED DEGREE OF DEFICIENCY IN THE OFFICER'S TRAINING TO ESTABLISH DELIBERATE DIFFERENCE IN COUNT 7

Plaintiffs also assert in Count 7 a § 1983 theory of inadequate training and supervision. To state that claim, Plaintiffs must allege not only that the inadequacy existed, but also that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This "heightened degree of culpability" can be established only where "the failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." *Id*. at 388, 392.

Plaintiffs do allege, at least implicitly, that the City's training was inadequate. [Doc. 18 ¶ 121.] Plaintiffs do not allege any <u>facts</u> suggesting the alleged failure was a deliberate or conscious choice, or upon which a reasonable jury could draw that conclusion. Plaintiffs only present conclusions that training decisions were not appropriate — potentially negligent or, at most, reckless. [Doc. 18 ¶¶ 125-27.] And again, Plaintiffs do not state facts suggesting <u>these</u> Officers were not adequately trained or supervised, or that the City knew or had reason to know of any propensity of the Officers that required different action. The SAC thus fails, on its face, to state a cognizable claim for municipal liability premised on negligent training or supervision in Count 7, and it must be dismissed.

## XI. DESPITE PLAINTIFFS' BEST EFFORTS, ITS CLAIMS ARE NOT VIABLE; THE SAC MUST BE DISMISSED

Although Plaintiffs have amended their complaint two times, it still fails to state any valid claim for the relief. Even accepting the allegations of the SAC as true, it does not state a claim against the City for vicarious liability of an intentional tort in Count 1 because Officer Drake did not have and the City did not know of any dangerous propensity. The SAC does not state a claim for gross negligence in Count 2 because even if true, the brief unreasonable

detention and failure to explain the reason for an arrest alleged do not implicate substantial risks of serious harm.

The SAC also does not contain any well-pled facts supporting state law claims for negligent hiring and training in Count 3, or that could establish the heightened standard training- and supervision-based constitutional violations in Count 7. The facts relayed in the SAC, considered in totality, do not give rise to an inference of unlawful detention or arrest or excessive force in Count 4 and Count 5; instead, they conclusively demonstrate the Officers' entitlement to qualified immunity for conduct which there was no clearly established constitutional prohibition.

Finally, the SAC does not state a claim for familial deprivation in Count 6 because there is no affirmative purpose to harm alleged. For each and all of these reasons, the SAC must be dismissed in its entirety, and judgment entered for the City and its Officers.

RESPECTFULLY SUBMITTED this 5th day of September, 2025.

BROENING OBERG WOODS & WILSON, P.C.

By  /s/ *Kelley M. Jancaitis*
Jessica J. Kokal
Kelley M. Jancaitis
2800 North Central Avenue, Suite 1600
Phoenix, Arizona 85004-1047
Telephone: (602) 271-7700
*Attorneys for Defendants*
*City of Phoenix and Officers Drake & Cowan*

## **CERTIFICATE OF SERVICE**

I certify that on this 5th day of September, 2025, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the parties registered with CM/ECF.

 /s/ Raquel L. Auriemma